IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE:<br><br>TRACY LYN JOHNSON, and<br>MARY LEE JOHNSON,<br><br>    Debtors. | Case No. 05-14449 |

## MEMORANDUM OPINION

This matter came before the Court for hearing on January 26, 2006, upon the Proposed Order of Confirmation filed by the Chapter 13 Trustee on January 11, 2006, and the Objection to Confirmation of Plan filed by General Motors Acceptance Corporation ("GMAC") on January 13, 2006. At the hearing, John H. Boddie appeared on behalf of the Debtors, Pamela P. Keenan appeared on behalf of GMAC, and Anita Jo Kinlaw Troxler appeared in her capacity as the Chapter 13 Trustee.

Based upon a review of the Order for Confirmation, the Objection to Confirmation, the arguments presented by counsel, and a review of the entire official file, this Court hereby makes the following findings of fact and conclusions of law.

### FACTS

1. On April 20, 2005, the Debtors purchased a 2002 Chrysler PT Cruiser (the "Vehicle") pursuant to the terms of an installment sales contract (the "Contract"). The Contract was assigned to GMAC, and GMAC is the sole owner and holder of the same.

2. Pursuant to the terms of the Contract, GMAC has a senior perfected first lien on the Vehicle.

3.  On November 13, 2005, the Debtors filed this Chapter 13 proceeding.

4.  As of the petition date, the net payoff due to GMAC under the Contract was $12,482.83, plus interest at the rate of 14.5% per annum.

5.  The Vehicle was acquired for the personal use of the Debtor.

6.  The Vehicle is valued in the November 2005 NADA Official Used Car Guide at $9,975 retail, plus an additional $1,100 credit for low mileage. Ninety-percent of the value is $9,967. If the Debtors surrender the Vehicle, then the parties agree that GMAC would likely recover less than this amount as the Vehicle's "liquidation value."

7.  On January 11, 2006, the Debtors's proposed a plan that treated GMAC as a secured creditor with a claim in the amount of $9,967.00 and thus attempted to "cram down" the value of GMAC's secured claim.

8.  On January 13, 2006, GMAC objected to the proposed plan arguing that the Vehicle debt could no longer be crammed down under the terms of the Bankruptcy Abuse Prevention Consumer Protection Act ("BAPCPA").

## ANALYSIS

The issue before the Court is whether a debtor can strip down the lien of a secured creditor under the terms of Section 1325(a)(9) when the collateral is a motor vehicle purchased by the debtor for personal use within nine hundred and ten days ("910") of the filing of the petition.

Pursuant to Section 1322(b)(2), a Chapter 13 plan may "modify the rights of holders of secured claims." Taken in conjunction with Section 506(a)(1), this provision has historically resulted in confirmed Chapter 13 plans that reduce the secured portion of a vehicle lender's claim

to the value of the collateral, with said amount paid with interest during the plan. Pursuant to Section 506(a), the claim would be bifurcated into a secured claim and an unsecured claim. BAPCPA changed this treatment. Appearing after subsection (a)(9), Section 1325 contains an unnumbered paragraph that provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in Section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Section 1325(a)(5), referenced in the paragraph above, provides:

with respect to each allowed secured claim provided for by the plan--

> (A) the holder of the claim has accepted the plan;
>
> (B) (i) the plan provides that--
>
>> (I) the holder of such claim retain the lien securing such claim until the earlier of--
>>
>>> (aa) the payment of the underlying debt determined by nonbankruptcy law; or
>>>
>>> (bb) discharge under 1328; and
>>
>> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
> (iii) if–

      (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

      (II) the holder of claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

  (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1325(a)(5).

### The Debtors' Argument

  The Debtors advance two arguments to support their position that stripdown of the vehicle lender's claim is available and appropriate under Section 1325(a)(9). First, the Debtors argue that if Congress intended to prevent the stripdown of loans secured by vehicles purchased within 910 days for personal use ("910 vehicles"), Congress could have said so. The statute does not say that loans secured by 910 vehicles cannot be modified; it merely says that "section 506 shall not apply." Since Section 506 is the only section that determines if a loan is secured or not, the new Section 1325(a)(9) turns 910 vehicle claims into unsecured claims. The Debtors argue that Section 506 continues to apply for all other purposes, including for modification of 910 vehicle claims pursuant to Section 1322(b)(2) and for the rest of Section 1325(a). If a debtor wants to keep a 910 vehicle, the argument continues, the claim of the creditor will be treated as a special kind of unsecured claim and paid at least as much as the liquidation value of the vehicle. However, the liquidation value is just a floor, and in some cases, such as when the debtor purchases a new vehicle immediately prior to filing bankruptcy, it might be appropriate to require the debtor to pay the full contract price. Thus, the amount that a debtor must pay should be determined on a case-by-case basis. The plain meaning of the statute, the Debtors contend,

requires a claim for a debt incurred within 910 days of filing to be unsecured if the creditor has a purchase money security interest secured by a vehicle for personal use.

In support of their argument, the Debtors note that BAPCPA focused on debtor abuse. They argue that if Congress chose to remove valuation issues as the focus when a debtor purchases a vehicle within 910 days before bankruptcy, then Congress must have wanted courts to focus on good faith.[1]  The bankruptcy court should therefore focus on whether the plan has been filed in good faith.

In support of the Debtors' contention that the case was filed in good faith, the male Debtor testified at the hearing.  He testified that the Debtors purchased the Vehicle because they both work and need transportation.[2]  When he was asked why the Debtors filed their bankruptcy case, the male Debtor testified that the Debtors had made some poor financial decisions and had incurred debt beyond their ability to pay it back.  Also, the male Debtor lost his part-time job shortly before the petition date, and the female Debtor's hours were reduced.  They used credit cards during this time, and they simply got into debt too deeply.  The male Debtor testified that they had no intention of filing bankruptcy at the time they purchased the Vehicle and did not want to file but saw no other way to address the problem.

The male Debtor testified that the Debtors can afford the proposed plan payments based

---

[1] In support of their contention that good faith is the operative test when determining vehicle lien stripdown, the Debtors quoted President George W. Bush when he signed the BAPCPA bill into law.  "In recent years, too many people have abused the bankruptcy laws. They've walked away from debts even when they had the ability to repay them." President Bush continued: "The law will allow us to clamp down on bankruptcy mills that make their money by advising abusers on how to game the system."

[2] The Debtors filed a previous Chapter 13 case in December of 1996.  They completed their Chapter 13 Plan in December of 2000.  The Vehicle debt is new debt.

5

on their current monthly income and expenses.[3]

The Court is satisfied that the Debtors filed this Chapter 13 case in good faith. However, the Court does not see how such good faith is relevant to the issue at hand.

The Debtors further argue that the language of the statute is clear on its face, and thus it is unnecessary to speculate about the intent of Congress. "It is well established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'" Lamie v. U.S. Trustee, 124 S.Ct. 1023, 1030 (2004). However, the Court cannot concur with the Debtors' reading of the statute. The Debtors maintain that Section 1325(a)(9) turns a secured claim into an unsecured claim if the creditor has a purchase money security interest in a vehicle purchased within 910 days of bankruptcy for personal use, but the Court can find no language in Section 1325(a) to support such a reading. The statute simply provides that debtors may not bifurcate the claims of lenders with purchase money security interests in vehicles purchased within 910 days of bankruptcy for the debtor's personal use. Such a creditor is entitled to the full payment of his contractual claim or to the return of the vehicle.

The second argument of the Debtors is that GMAC is secured by more than the Vehicle. The contract provides that GMAC is also secured by (a) insurance, maintenance, service, or other contracts financed by GMAC and (b) proceeds from insurance, maintenance, service, or other contracts financed by GMAC, including refunds of premiums or charges. Since GMAC is also secured by a service contract that the Debtors purchased for $1,095.00, GMAC is secured by

---

[3]The Debtors' monthly net income is $2,990.65, and their monthly net expenses are $1,735.00. The proposed monthly plan payment is $1,200.00. All parties agree that feasibility is not an issue and that the Debtors could fund the proposed plan.

more than the Vehicle and, the Debtors argue, Section 1325(a)(9) does not apply. The Court is unpersuaded by the Debtors' argument. Section 1325(a)(9) does not require a creditor to be secured "only" by a vehicle. In fact, Section 1325(a)(9) provides that it also applies to any other collateral purchased within one year before bankruptcy. Cases interpreting Section 1322(b)(2) to require that a creditor be secured "only" by a mortgage[4] in order to gain the protections of that section are distinguishable from the case at hand.

    The Creditor's Argument

GMAC argues that the terms of Section 1325(a)(9) are ambiguous. GMAC maintains that the only logical reading of the "hanging paragraph" in Section 1325(a)(9) is that it creates special treatment for purchase money security interest creditors who lend to debtors who purchase motor vehicles for personal use within 910 days of the bankruptcy filing. The only way to harmonize Section 506(a) and Section 1325(a)(9) is not to apply the bifurcation language of Section 506(a) to this type of creditor and thus disallow the cramdown of such a claim. GMAC cited earlier versions of the BAPCPA bill, which demonstrate that Congress entertained the idea of eliminating purchase money security interest stripdowns altogether. Further, GMAC argues that the purpose of enacting BAPCPA was to put more money in the hands of such creditors. The Debtors' reading of the statute does not comport with such a purpose.

GMAC's interpretation of the statute does not make the language of Section 1322(b)(2) meaningless; a plan may still modify the term of the loan and the interest rate, even if bifurcation is not allowed. GMAC's interpretation of the statute is consistent with the scant legislative history of Section 1325(a)(9). Congress did not intend lesser treatment of secured creditors in

---

[4] See, e.g., In re Hughes, No. 04-83682, slip op. at 7 (Bankr. M.D.N.C. October 28, 2005).

legislation that was drafted to give creditors "fair treatment in chapter 13" that will "restore the foundation of secured credit."[5]

The Court finds the reasoning of GMAC persuasive. The Court need not determine whether the language of Section 1325(a)(9) is ambiguous;[6] either position leads to the same result.

## CONCLUSION

Section 1325(a)(9) prevents purchase money security loans on vehicles purchased for the personal use of the debtor within 910 days of the filing of the petition from being stripped down in a Chapter 13 plan. To conclude otherwise would be inconsistent with the terms of the statute and the legislative history of the statute, sparse as it is. Section 1325(a)(9) prevents a debtor from paying less than the full contract amount if the debtor chooses to retain the vehicle. However, pursuant to Section 1322(b)(2), a debtor may still modify the term and the interest rate of the loan.

The Court is unpersuaded by the Debtors' argument that GMAC is secured by more than the Vehicle and therefore Section 1325(a)(9) does not apply. The language of Section 1325(a)(9) does not lead to such a result.

The Debtors' plan must provide for payment of $12,482.83 to GMAC over the life of the plan[7] or the Debtors must surrender the vehicle.

---

[5] 151 Cong. Rec. S. 1726, 109th Cong. (2005).

[6] GMAC believes Section 1325(a)(9) to be ambiguous because it should have referred to subsection (a) of Section 506 rather than to Section 506 in its entirety.

[7] The Debtors' proposed plan was modified in open court to provide full payment to GMAC in the amount of $12,482.83. After such modification, the Court confirmed the Debtors'

       This memorandum opinion constitutes the Courts' findings of fact and conclusions of law.  A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

---

chapter 13 plan.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE:  )<br>  )<br>TRACY LYN JOHNSON, and  )<br>MARY LEE JOHNSON,  )   Case No. 05-14449<br>  )<br>  Debtors.  )<br>_____) | |

PARTIES IN INTEREST

Tracy Lyn Johnson

Mary Lee Johnson

John H. Boddie, Esquire

Pamela Keenan, Esquire

Anita Jo Kinlaw Troxler, Esquire